Good morning Your Honor, I'm Stephanie Carvelan, I'm Counsel for Appellant Hodaya and I'm here with Hodaya Johnson. Did you represent Mr. Johnson below? I did not, Your Honor. Good. Obviously, Your Honor is very well aware of what the issue is. The question here is whether or not a 2003 conviction Mr. Johnson sustained in New York State Court under New York Penal Law 226, which prohibited certain conduct, particularly intent, possession with intent to sell. How could it be plain error when we believe this is an unsettled issue in our court? I'm sorry, Your Honor. How could it be plain error when we believe that whether you use the trial of the offense or the trial of sentencing to read the guidelines and the New York statute, how could it be plain error if that wasn't the case in 2003 when Mr. Johnson committed the offense under 230, I think it is, of New York 220-16? Yes, Your Honor. How could it be plain I'm saying as if it's unsettled in our court? Well, I think there is a recent discussion of that, Your Honor's decision in United States v. Lucas in August of this year, 2021, which the government brought to the court's attention in a 28-J letter. And in that case, this court did find that arguments that encompass the argument, well, slightly narrower arguments than the ones that Mr. Johnson made here, but essentially equivalent, could not be subject to plain error standard or could not be redressed by plain error of review for exactly the reason that Your Honor is saying. If Mr. Johnson had counsel that raised the issue of his sentencing, then we would not be looking at plain error. It would have been, we would have had to face the issue of trial of offense or trial of sentencing, but we weren't forced to below because his counsel was not aware of the change in the New York state list of drugs. Well, first I would say there's no question of waiver here, and this court has to make a distinction, which the government did not make, between waiver and forfeiture. There is no waiver here. Waiver is an intentional and knowing relinquishment of a right, such as happens in a plea. I'm advised by the court about all my rights and my knowing waiver is secure. Forfeiture, and this comes directly from the key case on this, ONO, and the United States Supreme Court makes that distinction. Forfeiture is where I failed to assert a right. But forfeiture still brings with it the plain error or perhaps relaxed plain error analysis. Yes, absolutely, Your Honor. I just want to be sure that we're in that court, not in the waiver, which would make it impossible to raise the issue. So, yes, then the question becomes is what is the significance of your decision in the United States v. Lucas earlier this year? I would say that in Lucas, respectfully, and many other cases. And Townsend. I'm sorry, Your Honor. Townsend as well as Lucas. Oh, well, Townsend addressed the issue, so that would help me. But in terms of Lucas, Your Honor, what Rule 52B says is that error that affects substantial rights can be recognized on appeal, even if an appropriate objection wasn't made below. The question is not whether the district court erred, although sometimes it's loosely stated in that way. It's whether at the time of appellate review, we now know that the law was wrong. So, although in Lucas they refer to the panel, Lucas refers to there was only one decision in the district court at the time that that defendant was sentenced, and that therefore there was not a basis for claiming plain error here. That's not the question. The question is at the time of appellate review, what is the state of the law? And what I would suggest to the court in this case is Lucas has applied for rehearing en banc. That is still pending before this court. They just put in their papers for that. This court is going to face this same issue about the effect of a prior conviction under New York Penal Law 2-2016 in United States v. Gibson, which comes to this court as the government's appeal. So there will be no issue of preservation in that case. So shortly, this court is going to have to decide that issue. Wait, sorry. Is the application simply that we hold a decision for rehearing en banc in Lucas to run its course? Yes. If it's granted. If it's granted. Exactly. And also for the decision in Gibson. So first of all, for example— All right. But let's suppose that this panel nevertheless has some say in the matter and isn't merely deferring to a hypothetical en banc judgment. Right. And if we have to engage with the merits of it, how can it be said to be plain that applying the realistic probability test, we can really be confident that the New York courts would have treated the term narcotic drug to pick up—I won't try to pronounce them, but at least three exotic drugs. The realistic—again, this is a complete red herring. The realistic probability test has no application here. The government is trying to argue that because the New York statute doesn't specifically list those two drugs, which I also won't try to pronounce, that somehow it's not spatially on the statute, and therefore the realistic probability test must be applied. That is incorrect. The New York statute says opiates and their derivatives, and opium and its derivatives, are prohibited. It doesn't have to then specifically list every single opium or opioid or every derivative thereof. We know these drugs are derivatives because the DEA originally scheduled them and had to de-schedule them later, chose to de-schedule them later at the initiation of the drug companies that manufactured them. I use the analogy in my brief. If a law says that you may only wear the color white, it doesn't then have to say that means you can't wear blue or green or yellow. If you can only wear white, everything else is prohibited. If all opioids or their derivatives are prohibited, that includes these drugs, as long as they are derivatives of opioids. So you never get to the realistic probability test. So I'd ask the court to wait until the decision on the petition for re-hearing on Lucas, and then also wait until the decision on Gibson. This is vastly significant to Mr. Johnson. His guideline range has increased from 57 to 71 months, to 188 to 235 months. If this court were to report- Well, he said he was 132 months. Yes, his guideline range tripled, more than tripled. Right, but he was sentenced to below guidelines. He was. But above the guideline that otherwise would have applied by a lot. Dramatically twice, at least twice. For example, if in Gibson this court on January 1st says that there is not that match, that my theory or legal argument is correct, and that there is not a match between the 2016 New York definition of narcotic drug and the federal definition, and reverses Gibson's conviction, and the next day Mr. Johnson, this court decides in Mr. Johnson's case that he doesn't get any relief, at the time that this court makes that decision in Gibson, that becomes plain error. It becomes error that is obvious at that moment. As the court knows from United States Henderson v. Henderson, the Supreme Court case, the issue is at the time of appellate review. So I'm asking the court to delay its appellate review on the substance of this particular, not the other issue. Sorry, doesn't the plain error analysis ultimately focus on what Judge Seibel, the sentencing judge, whether it would have been plain to her given the absence of objection as of the date of sentencing? No, that's exactly the point that I'm trying to make, that the error, whether the error is plain, is reviewed and determined at the time of the appellate review. Again, it's not whether Judge Seibel admitted an error. We have to put ourselves in Judge Seibel's place? No. So what does it mean at appellate review? Well, that's what I'm saying, is that the time that this court reviews this case is the time of appellate review. So if Gibson were decided tomorrow and found in my favor at the time of appellate review, and this is a Supreme Court case, United States v. Henderson, which is cited in my brief, I think we all agree on that, that the time that that analysis is made is at the time of appellate review. Your time has expired, counsel. You have three minutes for rebuttal. Yes, Your Honor. Thank you. So we'll hear from the government. Thank you. Good morning, counsel. Judge Pooler, Judge Lee, Judge Engelmeyer, may it please the Court. In 2019, Hedaya Johnson appeared before Judge Seibel for sentencing. Everybody involved agrees that Johnson's 2003 conviction under 220.16 sub 1 Including his counsel who kept saying my client is a career offender. That's right. That's absolutely right, and that factors in here. Because Judge Seibel, in part, is relying on counsel to make contrary arguments. That's part of the concept of plain error review, why you have to object in order to preserve an issue, because it is an adversarial system, and there is an assumption that the lawyers will be in some way involved in bringing that case. But it's clear now that Mr. Johnson was ill-served by his counsel. Well, frankly, I would disagree that he was ill-served, because this was a brand-new issue at the time that I think Brand-new issue is what we expect counsel to be aware of. And it's not an issue that had been resolved, and it's not an issue that's been resolved today, two years later. You agree, though, that the standard for this is whether this is error today. You judge it based on that, not whether or not it was error that was plain at the time of the sentencing. Do you agree with what your adversary said about how we judge plain error? Well, what the court pointed out in Lucas was you can take into account, and whether it's plain error, whether there was any case law on it at the time. If I can just pinpoint to you a little bit, though. We are to judge, though, whether or not the error today, as we're considering this appeal, whether or not today the error is plain, not whether or not it was plain at the time of Judge Seibel's sentencing. That is correct. It is as of today, and as of today, there still is no case law on this, certainly not from the circuit. As to one of the issues, there is one single written opinion on the case from the district. Excuse me, what about Townsend? Didn't Townsend find that it was error? No. Townsend found that a different part of the statute was broader, and this is very important. In Townsend, they were considering what was a, quote, controlled substance under New York State law. This is important because in New York State law, there are three, what I'll call, generic or broad definitions of substances under New York State law beyond when they go to specific things like methamphetamines and hallucinogens, and those are controlled substances, narcotic drugs, and narcotic preparation. So it's a different list. That's right, and each one covers a different part of the schedule. There's some overlap between them, but not total. Importantly here, the word controlled substance in New York State law includes all Schedule III substances. In Townsend, the Second Circuit said a controlled substance under New York State law is categorically broader than a controlled substance under federal law because Schedule IIIg has, as an enumerated substance, and I will try to pronounce it, chorionic gonadotropin, which is more commonly known as HCG or human growth hormone. I'll just use that. Human growth hormone. And the federal schedules do not bar the sale, the possession, etc., of human growth hormone. Importantly, narcotic drug and narcotic preparation in 220.16 sub 1, the statute at question here, bars the possession with intent to sell of a, quote, narcotic drug. Narcotic drug does not include Schedule III substances. So narcotic drug does not include chorionic gonadotropin, human growth hormone. In fact, the defense counsel has not pointed to any substance that the statute lists by name, that is, that is on its face listed, that is a narcotic drug that is not also scheduled under the federal schedule. In your brief, you spend a lot talking about this on its face. Why does it have to be listed if the language of the statute makes clear that it's including this large category, any derivative? Because the language of the statute is not clear, and let me explain why. What the word derivative means is terribly unclear. It can actually run the gamut in chemistry. But just doesn't the DEA think that these substances are, in fact, derivatives of opiate? It's not some sort of, this is a completely novel notion that these are derivatives. It's not that this is an unreasonable definition of derivative. We are not saying that. The DEA is entitled to think that this substance is a derivative. However, this was a huge debate in the 80s where pharmaceutical companies were having debates of whether substances had to be treated as controlled substances that they were developing, and they got into lawsuits with the DEA over the definition of derivatives. And this ended up at the D.C. Circuit in 1986, where the D.C. Circuit specifically said there's nothing in the statute, nothing in the legislative history, nothing in anything that gives us any guidance whatsoever as to what the word derivative means. And it also said there's this wide range of wholly reasonable versions of derivatives. The broadest one, the water on your honor's desk, would be a derivative of opiate because given an infinite number of reactions, I can create water out of sediment. And it said obviously nobody expects that to be the meaning of derivative. It said you can back up to what the administrative law judge said, which is a derivative is a substance that can be derived in one or two steps from the original substance. Which, to be clear, naloxogol cannot be derived in one or two steps from the original substance. Rather, naloxogol is derived in several steps from something called naloxone, which we also know as Narcan. And Narcan is not an illegal substance. It's specifically exempted. And naloxone itself- I'm sorry, the science is- Yeah. Just on a more basic level, this type of analysis that you're making about we can't say what a derivative is, I mean, do you have support for that? I mean, it's very, you know, again, to my mind, if there's an example of some general organization considering this, yes, this is a derivative, and you're kind of explaining to me on a science level, well, maybe it's not a derivative. The support for this argument you're making, where is that? Where are pieces that are looking at derivatives in this way? The support for this argument is as clear as day in the Reckitt case in the D.C. Circuit, where this came up, and Reckitt ended up saying there's this wide variety of derivatives, and I won't go through the science on the derivatives unless you really want to be bored and go to sleep easily on the bench. But there's this wide range of reasonable definitions of derivatives, and because there's no indication of what the statute means, under Chevron deference, the DEA is administering its own regulations with regard to derivatives, and we say we will defer to the administration as long as its definition is a reasonable definition. And that's why I'm saying there's nothing unreasonable about the definition that makes naloxagol a derivative. But the problem is there's nothing unreasonable about definitions that do not make naloxagol a derivative, and the New York State statute, because the New York State statute is not defined and not interpreted by the DEA, the New York State statute doesn't say what version of derivative it's using. It's a definition problem. They dropped it off the list in 2015 in any event. Isn't that correct? The federal government dropped it off the list. The New York State statute has never touched it, and I would argue in part because it has no need to. So my question is why wouldn't we, by analogizing Townsend, which used a different list, but looked at it at the time of appellate review and found that if the New York State was broader, it can't act as a felony for calculation of career offenders. Why wouldn't we apply the same theory in this case? Because Townsend didn't look at the timing because there was no change in the New York State statute between the time of conviction and the time of sentencing. That is, chlorionic and nauticapin was a controlled substance under New York State law at both. So the timing that you look at it wasn't initial. Was naloxygel on the list in New York? It is not. That's the point. You can search high and low in New York public health law section 3306 for the word naloxygel, and you will not find it. It's not listed. Rather, the argument here is one based on… Right, but it says any derivative. Pardon? The New York statute says any derivative. It has the word any. It doesn't say the word any, but it does say derivative, and the question is what does it mean by derivative, and that is a very complicated question that the D.C. Circuit, in looking at a nearly identical statute, said there's nothing about the statute that tells us what they mean by derivative. And as you sit here today, to what degree has the case law clarified whether the three substances at issue here are or are not derivatives? As I sit here today, the case law has not clarified it in any way, shape, or form. As I sit here today, there are some cases in which there have been oral pronouncements by judges on this issue. Judge Kaplan found that it is not categorically broader. Judge, when it comes to naloxygel, there's also the cocaine-icemar argument. When it comes to naloxygel, Judge Furman has orally found that it is broader, and Judge Buchwald said that if she were to reach the decision, she believes that the government would have won that issue. And as to the panel decision in Lucas, assuming for argument's sake that that was precedential, is there a basis for distinguishing it here? Not at all. I mean, how on course it is is almost miraculous in that there is a 2003 conviction for a violation of 220.16 sub 1, and the question was did it qualify as a controlled substance offense for the purposes of career offender designation. And this court specifically said, look, without any real guidance thus far as to the timing issue when it comes to naloxygel or naldezimabine, or the cocaine-icemar issue, which is complicated for reasons that get even more into the chemistry, we just can't say that it's plain error. In fact, if there's any distinction at all, it's that unlike here in Lucas, the lawyer wasn't specifically saying that it is a controlled substance offense. There was silence on the matter. Here the lawyer was telling Judge Seibel he's a career offender and thus telling her don't look at this issue. There are other 3553 issues that I want to look at instead. And it worked. He got her to give him a significantly below guideline sentence. On the other hand, it's clear, is it not, that Judge Seibel's sentence was yanked upward by the career offender guideline. There's absolutely no reason to assume she would have been above the otherwise applicable guideline, but for his fitting into the career offender. No, I'm not saying that at all. Obviously the guidelines were important here. I'm just saying that this is something where she had no basis to try to delve into the chemistry, figure out the definition of derivative, figure out the timing issue, figure out how cocaine molecules are structured. When everybody was telling her, look, he's a career offender, let's get to other issues instead. Right, but you agree that at this stage, it's not about a referendum on what Judge Seibel did. It's what the law is now as we're judging this appeal in terms of whether or not this is, in fact, a plain error. For a plain error, that is correct. But as of now, the law is the same as it was when Judge Seibel decided. Thank you, counsel. Thank you. Ms. Carlin, you have reserved three minutes, I think, for rebuttal. I did, Your Honor. Thank you. Just to follow up on a few points, very significantly, again, as Judge Lee pointed out, the question is not whether it specifically lists these two substances. The question is whether they are included in the prohibition, and they are because it prohibits opioids, opiums, or derivatives. The government seeks to impose some definition of derivative that does not come from the statute. Derivative, according to the DEA, and Chevron deference cuts in the favor of crediting what the DEA originally determined, and the DEA originally determined that these two drugs were derivatives. There's nothing in the statute that says it has to be a first-degree derivative. A common-sense definition of derivative would be something that comes from. There's no limitation in that, that it must come from first generation, second generation, or tenth generation. We don't even have to get there because we have an interpretation by the DEA that the entity that originally scheduled this substance and made the determination in scheduling it, that it was an opium or opioid or derivative thereof. Are you aware of any case where the basis for finding plain error wasn't a court decision as of the time of the appeal, but a DEA interpretation? No, but I'm not, but I respectfully don't think that's the issue. I think the point that I'm trying to make in talking about what the DEA had to say about it is that the common-sense word derivative includes these two drugs. They are derived from. The government isn't contesting that they weren't derived from. The purpose of the DEA is to respond to the government's argument that somehow it doesn't meet the definition of derivative. The DEA, the definitive authority on this, decided it did meet the definition of derivative, which is why it's on that schedule. Counsel, how could this be plain error if no one called it to the attention of the district court and the attorney for Mr. Johnson, indeed, kept saying my client is a career offender? How can we say she committed error in that situation? I don't ask that you say that she committed error in the situation. What I ask is that the court find that the sentence, the career determination, offender determination, was incorrect. As Judge Lee said, this is not a condemnation of the district court judge. Law changes. But isn't there some change between the day? I take the point that the relevant vantage point is today, but is there any difference in terms of the case law between 2019 and today as relevant to this question? That's why I'm asking the court. Well, in terms of the co-chain, there are. There are three circuit court decisions. The First Circuit, the Sixth Circuit, and the Ninth Circuit have all determined that the time of sentencing analysis, federal sentencing analysis, should be used. And under that analysis, the co-chain argument would prevail. But in terms of the other two drugs, no. I'm not aware of a case, which is why I say to this court that in fairness, you have the authority to do it, and in fairness, for the appearance of justice, this man should be sentenced based on a correct determination of whether he's a career offender or not. So let's wait and see what the court does on Bonk in terms of Lucas. If it's even granted. If it's granted, correct. And is the issue squarely placed before us in Gibson? It is in Lucas. In Gibson, yes. Even more so because, as I said, it's a government appeal, so there's no question of plain error. This court will have to decide in Gibson, whatever panel of this court, will have to decide in Gibson these issues. So this is not... And are you recommending we hold this decision? Yes. I am recommending that. I think to have Mr. Johnson found to be a career offender and then the next day this court decides in Gibson that the arguments we're asserting here are incorrect, are correct, excuse me, and that there is not a match, that the New York statute is overly broad, but too bad. They're both on appeal at the same time. As a matter of fact, Gibson was scheduled to be argued on September 23rd, and for whatever reason, it was delayed. So, yes, I am asking the court to hold off the decision. Because otherwise your remedy, if we had ruled against you here and then a favorable decision came down, if the deadline to act here had passed, you'd be stuck with seeking cert to get that corrected. Yes, and an ineffective assistance to counsel claim also. I have not had an opportunity to address the other argument, which is the district court's comments during sentencing about Mr. Johnson. We have you briefed. Thank you. Thank you both very much for a very interesting case. We'll reserve decision. The last item on our calendar is on submission, so I will ask the clerk to adjourn court. Court is now adjourned. Thank you. Thank you.